## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **JAWBONE INNOVATIONS, LLC,**<br>**Plaintiff,**<br><br>*v.*<br><br>**GOOGLE LLC,**<br>**Defendant.** | PUBLIC VERSION<br><br>**6:21-cv-00985-ADA** |

### MEMORANDUM OPINION & ORDER

Came on for consideration this date is Defendant Google LLC's ("Google" or "Defendant") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California filed on April 29, 2022. ECF No. 41 (the "Motion"). Plaintiff Jawbone Innovations, LLC, ("Jawbone" or "Plaintiff") filed an opposition on August 16, 2022, ECF No. 73, to which Google filed a reply on August 26, 2022, ECF No. 76. After careful consideration of the Motion, the parties' briefs, and the applicable law, the Court **DENIES** Google's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

### I. BACKGROUND

On September 23, 2021, Jawbone sued Google, alleging infringement of nine U.S. Patents.[1] ECF No. 1 (the "Complaint"). Jawbone is a Texas LLC with its principal place of business in Waco, Texas. *Id.* ¶ 1. Google is a Delaware limited liability company with its principal place of business in Mountain View, California. *Id.* ¶ 2. According to Jawbone's First Amended

---

[1] The asserted patents include U.S. Patent Nos. 8,019,091 (the "'091 Patent"), 7,246,058 (the "'058 Patent"), 8,280,072 (the "'072 Patent), 8,321,213 (the "'213 Patent"), 8,326,611 (the "'611 Patent"), 10,779,080 (the "'080 Patent"), 11,122,357 (the "'357 Patent"), 8,467,543 (the "'543 Patent"), and 8,503,691 (the "'691 Patent") (collectively, the "Asserted Patents").

Complaint, Google products infringe the Asserted Patents by supporting acoustic noise suppression and acoustic voice activity detection technologies. ECF No. 23 ¶¶ 34–48.

For the '091 and '058 Patents, Jawbone identifies the Google ear buds and smartphones as infringing, including the Google Pixel Buds. *Id*. ¶ 36. For the '072, '080, '357, and '691 Patents, Jawbone identifies Google products with omnidirectional physical MEMs microphones which form virtual beamformed microphones as infringing, including Google ear buds, smart phones, tablets, wearables, and smart home devices. *Id.* ¶ 38, 42, 44. Specifically, Jawbone identifies the Google Pixel Buds as infringing. *Id.* For the '611 and '213 Patents, Jawbone identifies Google ear buds, smart phones, tablets, wearables, and smart home devices as infringing. *Id* ¶ 40. Specifically, Jawbone identifies the Google Nest as infringing. *Id.* And for the '543 Patent, Jawbone identifies the Google Pixel Buds, Google Pixel buds Pro, and Google Pixel 5 as infringing. *Id.* ¶ 46. Finally, Jawbone identifies the following products as infringing any one of the Asserted Patents: "all versions and variants of Google smartphones (e.g., Pixel, Nexus, Android One, Play Edition series products) tablets and/or notebooks (e.g., Pixel Slate and Pixelbook series products), earbuds (e.g., Pixel Buds series products), smart home devices (e.g., Google Home and Nexus series products), and other Android Devices with Google Assistant functionality." *Id.* ¶ 47. The Court will refer to all these products as the "Accused Products."

There are six named inventors on the Asserted Patents: Gregory Burnett, Eric Breitfeller, Nicolas Petit, Zhinian (Eric) Jing, Andrew Einaudi, and Alexander Asseily. ECF No. 41 at 4. A majority of these inventors presently reside in the NDCA, but Gregory Burnett, who is the only named inventor to be listed on all of the Asserted Patents, is located in Omaha, Nebraska. ECF No. 73 at 3 (citing Burnett Decl., ¶ 5).

Jawbone filed one other case in this Court asserting infringement of the Asserted Patent. *See Jawbone Innovations, LLC v. Apple Inc.*, No. 6-21-cv-00984, Dkt. 1 (W.D. Tex. Sept. 23, 2021) ("Apple Case"). On April 29, 2022, Google filed its Motion under 28 U.S.C. § 1404(a), seeking transfer to the Northern District of California (the "NDCA"). ECF No. 41. That Motion is now ripe for judgment.

## II. LEGAL STANDARD

In patent cases, regional circuit law governs motions to transfer under § 1404(a). *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought in the [transfer] destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252,

70 L. Ed. 2d 419 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l Ltd. v. Gulf Consol. Int'l Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The moving party has the burden to prove that a case should be transferred for convenience. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III. ANALYSIS

### A.    Venue and Jurisdiction in the Transferee Forum

To satisfy § 1404(a)'s preliminary question, the movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *See*

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at \*5 (W.D. Tex. Mar. 25, 2022). Google asserts that this case could have been brought in the NDCA because it is where "Google is headquartered." ECF No. 41 at 6. Jawbone does not dispute this contention. *See generally*, ECF No. 73. This Court finds that venue would have been proper in NDCA had Jawbone filed this case there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine whether the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

**B.   Private Interest Factors**

1.   Cost of Attendance of Willing Witnesses

The Fifth Circuit established the "100-mile rule," which provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at \*14 (Fed. Cir. Sept. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See, e.g.*, *id.* at \*12 ("[T]ime is a more important metric than distance."). Or to simply disregard any difference in convenience between the relevant fora where it is comfortable concluding that a witness would have to travel a significant distance regardless of whether the court transfers the action or not. *See In re Apple Inc.*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the 100-mile rule should not be, "rigidly,"

applied in the context of foreign witnesses); *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google*, 2021 U.S. App. LEXIS 29137, at *12.

The Court holds that this factor slightly favors transfer because of the number of relevant Google personnel in the NDCA.

### a.     West Coast Google Personnel

Google argues this factor favors transfer because "Google's key employees" with knowledge relevant to the Accused Products are in or around the NDCA. ECF No. 41 at 7. In support of this argument, Google provides a declaration from Ms. Michelle True, a Senior Legal Project Manager on the Discovery Legal Team at Google in the NDCA. ECF No. 41-1 (the "True Declaration") ¶ 1.[2] Ms. True testifies that "Google's Mountain View headquarters . . . is the

---

[2] Ms. True's declaration suffers from many of the same issues that Google's declarants have made in the past. *See, e.g.*, *Scramoge Tech. Ltd., v. Google LLC*, No. 6:21-cv-00616, Dkt. No. 65 (W.D. Tex. May 20, 2022). For example, Ms. True states that "[b]ased on my knowledge and investigation, . . . ██████████████████████████████████████████████████████ ██████████████████████████████████████████ ECF No. 41-1 ¶ 16. Ms. True does not provide the basis of her knowledge or explain what she did to investigate. *See, generally, id.* Importantly, Ms. True is merely a "[p]roject Manager on the Discovery and Litigation Support team at Google," so she is not an engineer who personally works on the design, development, or testing of the accused products and does not otherwise declare that she personally worked with individuals identified by Google in the willing witness or compulsory process factors *Id.* ¶ 1. Yet, in direct contrast to what Ms. True has declared, Jawbone is able to identify, as shown below, that there are in fact four relevant Google employees in the WDTX with relevant knowledge. Importantly, Jawbone identifies ████████████████████████████ as being in Texas and working on the very accused products that Ms. True claims in her Declaration to have investigated and determined to be not based in Texas. Because of the statements in Ms. True's declaration, the Court seriously calls into question her reliability as a declarant on this issue. And because the Court finds that Ms. True's declaration is unreliable at least with respect to the Accused Smart Speakers and Displays (ECF No. 41-1 ¶¶ 16–19), the Court discounts the weight that it gives to Ms. True's declaration for the willing witness factor.

strategic center of Google's business" and that "approximately ███ of Google's ███ total U.S. employees, including engineers, product managers, marketers, executives, and staff, are based in Northern California." *Id.* ¶ 3.

For each of the Accused Products, Ms. True identifies Google employees who work on the relevant accused features. Ms. True first specifies five NDCA-based Google engineers with knowledge of the Accused products. *Id.* ¶¶ 7, 8, 12, 13, 17. She lists ██████████████████



█████████████████████ *Id.* ¶ 7. She names ███████████████████████

████████████████████ *Id.* ¶ 8. Ms. True identifies ███

. *Id.* ¶ 12. Ms. True further lists ███████████████

██████████████ *Id.* ¶ 13 And finally, for the Accused Smart Speakers and Display, Ms. True identifies ████████████████

█████ *Id.* ¶ 17.

Ms. True next lists six Google employees with knowledge of marketing and financial aspects of the Accused Products that are based in or around Mountain View or San Francisco. *Id.* ¶¶ 10, 15, 19. The True Declaration indicates that Google's Mountain View-based employee ███



███████ has knowledge regarding ████████████████████████████████████
████████. *Id.* ¶ 10.i. It also names NDCA-based ████████████████, a ███████████
████████████████████████████████████████████████████████████
████████████████████████████. *Id.* ¶ 10.ii. The True Declaration further states that ██████████
████████████████████████████████████████████████████████████
███████████ *Id.* ¶ 15.i. Ms. True also lists San Francisco-based Google employee ██████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████.
*Id.* ¶ 15.ii. Ms. True then lists ████████ a ██████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████ *Id.* ¶ 19.i. Finally, Ms. True lists
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████ *Id.* ¶ 19.ii.

In the Court's judgment, the True Declaration establishes that these eleven named witnesses possess relevant and material knowledge for whom the NDCA would be a more convenient venue. The Court finds Jawbone's two arguments against Google's willing witnesses in the NDCA to be convincing but not sufficient. Jawbone first objects to Google's assertion of twenty fact witnesses because presenting them live would require multiple weeks of trial time. ECF No. 73 at 8–9. Then Jawbone objects that Google makes no effort to show what each witness would testify about, or why that witness's testimony would not be cumulative of other identified witnesses. *Id.* at 9. While the Court is very sympathetic to Jawbone's arguments, these arguments are insufficient to overcome the True Declaration's evidence that shows witnesses with relevant

and material knowledge for whom the NDCA would be a more convenient venue. However, the Court discounts the weight of this evidence for the reasons explained above that Ms. True's declaration is unreliable. *Supra* note 2.

        b.      Texas-based Google Personnel

Jawbone argues that Google ignores relevant witnesses in this District. ECF No. 73 at 8–9. Specifically, Jawbone contends that it has located at least five Google employees who appear to have relevant information and reside in this District. *Id.* The Court agrees but with one exception. First, Jawbone identifies ███████████ as a ████████████████████████████████ ██████████████████████████████████████████ *Id.* Then Jawbone lists ████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████ *Id.* Jawbone also identifies ████████████████████████ ██████████████████████████████████████████████████ ████████████████ *Id.* While Jawbone also lists ████████████ and ███████████ as relevant willing witnesses, Jawbone doesn't specify their role at Google but does specify that ███████████ ██████████████████████████████████████████████████ ████████████████████ *Id.* at 8 (citing ECF No. 73-12 at 13).

In response, Google contends that these Texas-based Google personnel are irrelevant. First, Google asserts that ███████████ left Google in 2020 and worked for ████████████. ECF No. 76 at 1, n.3. Next Google argues that Jawbone "already conceded the irrelevance of . . . ███████████ *Id.* at 1 (citing ECF No. 73 at 8). Then Google baldly proclaims that the work performed by the remaining three Google employees does not involve the accused features by citing its own interrogatory responses. *Id.* To support this contention, Google relies on the deposition testimony



of the three remaining Google employees identified by Jawbone. Regarding ███ and ███ ███, Google contends that each "does not work on the accused features." *Id.* at 1–2 (citing ECF Nos. 76-1, 76-2). As for ███, Google contends that he "███████████ ████████████████████████ ███" *Id.* (citing ECF No. 76-3). Finally, Google rebuts Jawbone's contention that "it is highly likely that the co- workers of [these] employees" are located in WDTX (ECF No. 73 at 8) because it is inconsistent with evidence showing that their team members are primarily in NDCA and none are in WDTX. ECF No. 76 at 2.

In sum, other than for ███, Google's arguments are unpersuasive, and the Court finds that Jawbone has shown at least four relevant Google personnel in the WDTX.

### c.    Jawbone Personnel

Jawbone asks the Court to weigh Jawbone personnel against transfer because, even though they do not work or reside in Texas, they are each willing and each "finds Waco more convenient than NDCA." ECF No. 73 at 9. While Jawbone has its principal place of business in Waco, Texas, none of its personnel are here in this District. *See* ECF No. 73 at 2. So Jawbone proposes that this Court ignore a plaintiff's inconvenience just so long as the plaintiff is willing to too. Stated another way, the Court should simply accord weight to a plaintiff's chosen venue, regardless of how truly inconvenient it is to the plaintiff. But a plaintiff's choice of venue is already baked into the movant's burden. *See Volkswagen II*, 545 F.3d at 314 n.10 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 127 S. Ct. 1184, 1191, 167 L. Ed. 2d 15 (2007)). Accordingly, the Court will not weigh the convenience of a plaintiff's witnesses against transfer under this factor merely because the plaintiff attests that travel to this District would not represent an inconvenience upon witnesses with no apparent connection to this District.

d.      Remaining Willing Witnesses

Jawbone identifies three remaining willing witnesses that are relevant to this case. Jawbone first identifies Dr. Burnett, an inventor on all of the Asserted Patents. ECF No. 73 at 9. According to Dr. Burnett, he is located in Omaha, Nebraska. ECF No. 73-6 ¶ 5. Dr. Burnett states ████████

████████████████████████████████████████████████████████████████████

██████████████████████. *Id.* ¶¶ 6–10. In contrast, the ██████████████████████████

████████████████████████████████ *Id.* ¶¶ 7–9.

Jawbone then lists Michael Luna, former Chief Technology Officer of Aliphcom, Inc. ("Aliphcom"), as having highly relevant knowledge regarding Aliphcom's intellectual property and products and is willing to travel this District. ECF No. 73 at 7, 9.  According to Google, the technology of the patents-in-suit was developed by AliphCom. ECF No. 41 at 4. While Mr. Luna is located in Daly City, California, he is willing to travel to this district and does not find it inconvenient. ECF No. 73-7 ¶ 11. Jawbone finally lists Scott Kokka, a prosecution attorney on the Asserted Patents, as willing to travel to this District for purposes of trial. ECF No. 73 at 3 (citing ECF No. 73-8 ¶ 9). Mr. Kokka, however, is located in Carlsbad, California. *See id.* Google rebuts Jawbone's assertion of these two witnesses because Google contends that "[n]either Mr. Luna nor Mr. Kokka claim that WDTX is more convenient than NDCA." ECF No. 76 at 2.

e.      Conclusion

Google named eleven willing witnesses with relevant knowledge in the NDCA. Jawbone names four willing witnesses with relevant knowledge in the WDTX.[3] Jawbone further names three willing witnesses outside of the WDTX, but this district is more convenient for only one of

---

[3] Given that Mr. Walker left Google in 2020, he is no longer considered a willing witness.

them. Given the unreliability of Ms. True's declaration, the Court therefore finds that this factor slightly favors transfer.

2.    Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). Further, this Court cannot "discount" third-party entities having pertinent information in the

transferee venue "just because individual employees were not identified." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *8 (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

 Google's Motion claims that Google is not aware of a single non-party witness in WDTX. ECF No. 41 at 9. Google argues this factor favors transfer because fifteen third-party witnesses with relevant information regarding the suit are in Northern California. *Id.* at 9. In support of this argument, Google provides a declaration from Ms. Rylee Olm, an associate at the law firm of Keker, Van Nest & Peters LLP. ECF No. 41-2 (the "Olm Declaration") ¶ 1. Citing the Olm Declaration and the exhibits cited therein, Google identifies five categories of nonparty witnesses. Google first identifies that four of the six inventors of the patents-in-suit currently reside in NDCA, including Mr. Breitfeller—an individual who Jawbone alleges informed Google of the patents-in-suit. ECF No. 41 at 9.  Second, Google asserts that the CEO and founder AliphCom, Hosain Rahman, resides in NDCA and will have relevant and material information about the valuation of the Asserted Patents as he was personally involved in several transactions involving the Asserted Patents. *Id.* Third, Google further contends that Mr. Kokka—the only attorney who prosecuted all nine asserted patents—and five other prosecuting attorneys reside or work in NDCA. *Id.* Fourth, Google states that it ███████████████████████████████████████████ ████████████ from three companies that are headquartered in or have offices in California—██ ██████████████████████████████—and Google's primary contact at ██████████ is in NDCA. *Id.* Google, however, is only able to identify the primary contacts at ███████████████ by name. *Id.* at 5 (citing True Declaration ¶ 14). Fifth and finally, Google identifies three former Google employees mentioned in Jawbone's Complaint are currently in NDCA. *Id.*

 Jawbone objects to most of these witnesses on the ground that Google has not provided the necessary demonstration that each (or any) of its fifteen identified witnesses will be necessary for

trial. ECF No. 73 at 10. First, Jawbone objects to Google's reliance on the named inventors of the Asserted Patents. *Id.* Specifically, Jawbone contends the none of the inventors relied on by Google are named on all of the Asserted Patents. *See id.* According to Jawbone, however, Dr. Burnett, a named inventor on every patent, resides in Omaha, Nebraska, which is closer to WDTX than California, and would prefer to testify in Waco. *Id.* The Court agrees that Google's reliance on the four inventors on ***some*** of the Asserted Patents cannot outweigh that the one inventor who is listed on ***all*** of the Asserted Patents is closer to WDTX than NDCA. However, this factor focuses on the availability of compulsory process, and a witness in Nebraska is not subject to the compulsory process of this Court. Moreover, the Court recognizes Mr. Breitfeller's relevance even though he listed on some of the asserted patents because Jawbone alleges that he informed Google of the patents-in-suit.

Second, Jawbone objects to Google's reliance on the patent prosecutors of the Asserted Patents. *See id.* at 10–11. Jawbone states that Mr. Gregory, who signed the initial applications leading to the '091 Patent, '058 Patent, '072 Patent, '543 Patent, '611 Patent, '213 Patent, and '691 Patent, resides in Houston, Texas. *Id.* at 10. Importantly, Mr. Gregory is within the subpoena power of this Court.[4] *See id.* at 11. However, Mr. Kokka—the only attorney who prosecuted all of the Asserted Patents—is subject to the subpoena power of the NDCA, but he is a willing witness and is not evaluated under this factor. *See id.* The Court is sympathetic to Jawbone's arguments that Google does not put forward any specific information that any of the prosecution attorneys have other than that they were involved in prosecuting the Asserted Patents. *See id.*

---

[4] Jawbone asserts that Mr. Gregory has testified that his firm no longer maintains an office in Silicon Valley and is therefore only within the subpoena power of this Court. *See* ECF No. 73 at n.7. While Google contends that Mr. Gregory may be subpoenaed by the NDCA because he has an office in San Francisco. ECF No. 76 at 3. Thus, the Court finds that he may be compelled to testify in either the NDCA or this Court.

Third, Jawbone objects to Google's reliance on Mr. Rahman as a potential witness. *Id.* Specifically, Jawbone objects that Google cannot identify any specific information that Mr. Rahman possesses that is not also known by Mr. Luna—former Chief Technology Officer of Aliphcom and a willing witness who Jawbone identified. *Id.* In response, Google contends that "there is no indication that Mr. Rahman's testimony will entirely overlap with Mr. Luna's." ECF No. 76 at n.6. The Court agrees and discounts the weight of Mr. Rahman being able to be compelled. And given that Mr. Luna is a willing witness, the Court will not evaluate him under this factor.

Fourth, Jawbone objects to Google's reliance on third-party companies █████████ █████████████████████████ ECF No. 73 at 11–12. Importantly, Jawbone asserts that Google concedes that ███████████ is actually headquartered ████████████████ and Google's primary contact for █████████ is located in ████████████. *Id.* at 12. Google does not rebut this fact. Accordingly, the Court will not weigh █████████ and Google's contact there in favor of transfer. Jawbone further objects to these companies because it contends that Google does not identify the specific information or knowledge that these third parties possess or that these parties are necessary for trial. *Id.* The Court finds, however, that Google has put forward specific information that it ███████████████████████████████████████ █████████ from two of the three identified companies and has identified their relevant witnesses. ECF No. 76 at 3.

In sum, the Court will, based on the relevant declarations from Google, accord weight to California-based ████████████████████████, named inventors, prosecuting attorneys, and former Google employees. The Court is satisfied that each has relevant knowledge and resides in California. Because they are based in California, the transferee court can compel

their testimony at trial—this Court cannot. As to those witnesses whose testimony this Court *can* compel, the Court recognizes that Mr. Gregory and ████████ are relevant witnesses that can be compelled by the Court. Given that, this factor weighs in favor of transfer.

### 3.  Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv,* 2019 U.S. Dist. LEXIS 171102, at *5. This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340; *In re Juniper*, 14 F.4th at 1321 ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having consistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic evidence. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute); *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). The Federal Circuit has held, however, that it is error not to also consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google*, 2021 U.S. App. LEXIS

33789, at *7; *see also Def. Distributed*, 30 F.4th at 434 & n.25 (considering, under this factor, where the "research, design, development, manufacturing, and publishing" of the allegedly offending files occurred). Finally, evidence located at a party's office that is not a "place of regular business" may be discounted. *See In re Google*, 2022 WL 1613192, at *4.

The Court finds that this factor is neutral. Google represents that the "vast majority of the research, design, development, and testing related to the Accused Products occurs in Mountain View, California." ECF No. 41 at 10 (citing True Declaration ¶¶ 6–8, 11–13, 16–17, 20). It further contends that "the relevant technical electronic documents are primarily created and maintained in Mountain View, where the custodians of those documents are located." *Id.* (citing True Declaration ¶ 25). Google then asserts that it has identified potentially relevant hardcopy documents, including development and research notebooks, that are located in Mountain View. *Id.* (citing True Declaration ¶¶ 8, 12, 20). Additionally, Google states that its financial and marketing documents relevant to the Accused Products are also created and maintained by employees located in NDCA. *Id.* (citing True Declaration ¶¶ 10, 15, 19). Google then asserts that it has not identified any relevant documents that are created or maintained in WDTX. *Id.* (citing True Declaration ¶¶ 7–8, 12–13, 17, 26). Finally, Google alleges that Jawbone's records will be stored in Maryland and not in the WDTX because Google alleges that Maryland is where Jawbone's alter ego is. *Id.*

In response, Jawbone rebuts Google's baldly proclaimed and unsupported accusations against it. *See* ECF No. 73 at 5. Jawbone first makes clear that Jawbone's relevant records are not located in Maryland. *Id.* (citing ECF No. 73-1 ("Eggleston Declaration") ¶ 9. Rather, Jawbone's sources of proof are located in its Waco office in the WDTX. *Id.* According to Jawbone and Mr. Eggleston, these sources of proof include documents related to the Asserted Patents, marketing, contracts, distribution, and sales activities. *Id.* (citing Eggleston Declaration ¶¶ 8–9). Further,

Jawbone states that their Waco office houses Jawbone's products for distribution. *Id.* (citing ECF No. 73-3 ¶ 5). Jawbone contends that these activities and documents tilt this factor against transfer. *Id.* (citing *Defense Distrib.*, 30 F.4th at 434 & n.25 (holding that plaintiff's activities and documents in Texas weighed against transfer)).

In reply, Google objects to Jawbone's documents in this district. ECF No. 76 at 4. In particular, Google objects that while Jawbone claims that it has "contracts" and "marketing" documents for unidentified products and that it keeps "products for distribution" in WDTX, Jawbone "does not identify any products or allege that they embody the patent claims." *Id.* According to Google, Jawbone's discovery responses identified "zero 'products that exploit the technology disclosed in the asserted patents." *Id.* Yet, Google also still maintains its bald proclamation that "the majority of [Jawbone]'s documents are likely maintained outside of WDTX" without citing any evidence to support it. While the Court appreciates Google's concerns that Jawbone has not shown that there are relevant sources of proof in this district, Google has not met its burden in rebutting the evidence put forward by Jawbone that there are relevant sources of proof in the WDTX.

Jawbone then endeavors to show how Google has not met its burden.

First, Jawbone objects to Google's interrogatory responses where Google stated that it "is aware of ███████████████████████████ in the Western District of Texas." *Id.* at 6. Jawbone also objects to Google's interrogatory response that "the relevant documents in this case would, in the course of ordinary business be created and maintained in the San Francisco Bay Area." *Id.* Jawbone argues that Google's carefully chosen statements cannot satisfy its burden. *Id.* Yet, Jawbone does not rebut Google's evidence that supports that very same interrogatory response.

18

Second, Jawbone asserts that Google has not explained where any documents are stored. *Id.* While it is true that Google admits that some of its relevant documents ████████████ ████████████████████████████████████ Jawbone ignores the evidence put forward by Google that Google's key technical witnesses keep hardcopy development and research notebooks in NDCA, and that prototypes are tested and stored in NDCA. *See* ECF No. 76 at 4. Jawbone also ignores Federal Circuit precedent, having held it error to disregard: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, 2021 LEXIS 33789, at *7. As to the location of where the relevant electronic information is stored, Jawbone asserts that the only data center that Google has identified is in Texas and that Google does not have a data center in California. ECF No. 73 at 7. Yet, Google has provided Jawbone with "23 locations of its data centers around the world; none are in WDTX." ECF No. 76 at 4.

Third, Jawbone alleges that "Google makes no effort to show that it will use any specific source of proof in NDCA at trial." ECF No. 73 at 7. Specifically, Jawbone objects that Google "merely asserts that sources of proof 'would' be 'created and maintained' there, without identifying the sources or how they are specifically relevant to trial." *Id.*

The Court agrees. In *In re Netflix, Inc.*, the Federal Circuit expressed satisfaction with the defendant's level of specificity when identifying sources of proof. No. 2022-110, 2022 WL 167470, at *3 (Fed. Cir. Jan. 19, 2022). There, the defendant submitted an affidavit stating that the defendant's source code was at the defendant's headquarters in the transferee venue, where the defendant's product and engineering teams were located, along with "any other documentation about the research, design, and development of" the accused technology. *Id.* The affidavit further

recited that the defendant maintains financial documentation at that same headquarters, where the defendant's corporate decision-making takes place. *Id.*

Unlike the defendant in *Netflix*, Google does not present sufficiently specific testimony. The True Declaration states that ███████████████████████████████████ ███████████████████████████████████████████████████ ECF No. 41-1 ¶¶ 6, 11, 16, 20. Yet, as analyzed above, Ms. True is merely a "Project Manager on the Discovery and Litigation Support team at Google," so she is not an engineer who personally works on the design, development, or testing of the accused products. She cannot reliably give the specific testimony that is required for this factor.

Ms. True further states that:

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

*Id.* ¶ 25. These generic statements do not suffice to establish that relevant technical, financial, and marketing evidence may be accessed with greater ease in the NDCA than this District. However, Ms. True's testimony regarding relevant ███████ and ███████ witnesses in California, *id.* ¶ 14, is sufficient to establish that *some* sources of proof are subject to easier access in California than Texas.

While Google has shown that there is easier access to some sources of proof in the NDCA, Jawbone has also shown that there is access to sources of proof in this District. *Defense Distrib.*, 30 F.4th at 434 & n.25 (holding that plaintiff's activities and documents in Texas weighed against transfer). Accordingly, this factor is neutral with regard to transfer.

4.    Practical Problems

This court also considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated

with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax, Ltd.*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex." *Bank of Texas v. Computer Stat., Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple Inc.*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13. In weighing this factor, this Court must "consider the presence of co-pending motions to transfer." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020); *see also In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017).

The defendant in Jawbone's co-pending case against Apple has moved for transfer. *See Jawbone Innovations, LLC v. Apple Inc.*, No. 6-21-cv-00984, Dkt. 38 (W.D. Tex. Sept. 23, 2021). Yet, because of a multitude of issues with Apple's unreliable declarant, that case will remain with this Court as the parties decide whether to re-brief their transfer motions and fact discovery will

continue. *See id.*, Dkt. 103. Accordingly, the Court discounts any weight that it would have given to the corresponding motion to transfer venue to the NDCA in the Apple Case. Contrary to Google's assertions, claim construction briefing has been completed and discovery has opened in this case. Thus, because "[j]udicial economy is served by having the same district court try the cases involving the same patents," this factor weighs against transfer. *Hammond Dev. Int'l v. Google LLC*, No. 1:20-cv-00342-ADA, 2020 WL 3452987, at *4-*5 (W.D. Tex. 2020) (finding this factor weighed against transfer when multiple cases on the same patents were pending in the same court).

### C.   Public Interest Factors

#### 1.   Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Court finds this factor to weigh slightly against transfer. Google argues that the median time to trial in both districts is comparable: 867 days for the Northern District of California versus 702 for this Court. ECF No. 41 at 13. "While the Federal Circuit has previously held that there are "no significant differences in caseload or time-to-trial statistics" between the WDTX and the NDCA, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021), recent data show that this Court has been able to hold trials faster than the Northern District of California, with an

approximate time to trial of two years.[5] The Federal Circuit has previously emphasized the importance of rapid disposition of patent cases. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). In view of Federal Circuit law and recent time-to-trial statistics, the Court finds this factor weighs slightly against transfer.

##### 2.   Local Interests

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-4387-K,

---

[5] *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Info. Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

2015 WL 13870507, at *4 (N.D. Tex. July 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *In re Apple Inc.*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence in the district. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

The Court finds this factor to be neutral. To be sure, Google has a strong presence within the NDCA and there is evidence that the accused products were developed there. However, Google also has a strong presence in the Western District of Texas—Jawbone correctly points out that Google employs over ████████ here, leases over 550,000 square feet of office space here, and intends to invest $50 million in Texas. ECF No. 73 at 13. Importantly, as shown above, Jawbone has demonstrated that there are Google employees in the WDTX ████████████████ ███████████████████████████. ECF No. 73 at 13.

But the Court must also look to the events that give rise to this lawsuit. *Juniper Networks*, 14 F.4th at 1320. Accordingly, the Court properly looks to the location where Google's accused technology was developed: the Northern District of California. ECF No. 41-1 ¶¶ 6, 11, 16, 20. As the Federal Circuit has made clear, the "research[], design[], and develop[ment]" of accused

technology within the Northern District of California are "significant factors that give the Northern District of California a legitimate interest in adjudicating the cases 'at home.'" *In re Samsung Elecs. Co.*, Ltd., 2 F.4th 1371 (Fed. Cir. 2021), *cert. denied sub nom. Ikorongo Tex. LLC v. Samsung Elecs. Co., Ltd.*, 142 S. Ct. 1445 (2022).

The Court holds that the location of Jawbone headquarters in Waco should be entitled to at least some weight and is not merely "recent and ephemeral." *Juniper Networks*, 14 F.4th at 1320. While Jawbone established itself in Waco less than one year before it filed this lawsuit (ECF No. 41 at 3–4 (citing Olm Declaration Exs. 2, 3)), Jawbone is a Texas entity that maintains an office in this District and receives and distributes products from this District. ECF No. 73 at 13. Moreover, Jawbone also maintains a corporate residence in Waco. *Id.* Such a connection to Waco weighs against transfer.

In conclusion, the Court finds that the local interest is neutral. Both the WDTX and the NDCA have strong connections to this case and therefore neutralize each other.

### 3.    Remaining Public Interest Factors

Google concedes that the remaining public interest factors are neutral and, in response, Jawbone states that these factors do not favor transfer. ECF No. 41 at 15; ECF No. 73 at 14. Jawbone, however, does not concede that this factor is neutral but does not put forward any arguments to the contrary. ECF No. 73 at 14. Accordingly, these factors are neutral.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusion for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | Weighs slightly in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs in favor of transfer |

| The relative ease of access to sources of proof | Neutral |
|---|---|
| All other practical problems that make the trial of a case easy, expeditious and inexpensive | Weighs against transfer |
| Administrative difficulties flowing from court congestion | Weighs slightly against transfer |
| Local interest | Neutral |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Problems associated with conflicts of law | Neutral |

Google has only established that the willing witness and compulsory process factors weigh, at most, in favor of transfer. Jawbone has established that the practical problems and administrative difficulties factors weigh against transfer. Because all other factors are neutral, Google has failed to meet its burden to show that the NDCA is a *clearly* more convenient venue. *Volkswagen II*, 545 F.3d at 314 n.10. Google's Motion is therefore **DENIED**.

SIGNED this 7th day of October, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE